**IN THE CIRCUIT COURT**
**FOR MONTGOMERY COUNTY, MARYLAND**

| | |
|---|---|
| JENNIFER HERNANDEZ<br>2403 Hanson Road<br>Edgewood, Maryland 21040 | * |
| | * |
| and | * |
| | |
| MANUEL MALDONADO<br>1122 Oak Tree Drive<br>Havre de Grace, Maryland 21078 | * |
| | * |
| *on their own behalf and on behalf of*<br>*all others similarly situated,* | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | Case No. __428885V__ |
| | * |
| ALLY BANK<br>6925 Union Park Center, Suite 435<br>Midvale, Utah 84047 | * |
| | * |
| Serve on:<br>The Corporation Trust Inc., Resident Agent<br>351 West Camden Street<br>Baltimore, Maryland 21201 | * |
| | * |
| Defendant. | * |

**RECEIVED**

JAN 05 2017

Clerk of the Circuit Court
Montgomery County, Md.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Jennifer Hernandez and Manuel Maldonado ("Named Plaintiffs"), on their own behalf and on behalf of all others similarly situated, by and through their undersigned attorneys, sue Defendant Ally Bank, formerly known as GMAC Bank ("Ally/GMAC").

1. This is a Complaint against Ally/GMAC for violating statutory, common law and contractual obligations. Named Plaintiffs and the Class are persons who entered into expensive debt cancellation agreements – often called "GAP" agreements – when financing their motor vehicle

purchases in Maryland. "Debt cancellation agreements" are defined by Maryland law as agreements "between a credit grantor and a borrower which provide[] for cancellation of the remaining loan balance in the event of theft or total destruction of the collateral for the loan after application of the proceeds of any insurance maintained on the collateral for the loan." However, the GAP agreements sold to Plaintiff and the Class are phony debt cancellation agreements -- not true debt cancellation agreements -- promise illusory benefits, and their costs may not be financed under Maryland's credit statutes. *See, e.g., Decohen v. Capital One, N.A.*, 703 F.3d 216 (4th Cir. 2012).

2.    Since 1941 when Maryland's Retail Installment Sales Act, Md. Code Ann., Com. Law § 12-601 *et seq.* ("RISA"), was enacted, the General Assembly has been wary of allowing car dealers to include charges for products of questionable value in credit contracts, recognizing that when interest charges are applied to these costs, considerable damage can be done to the buyer's financial wellbeing.  It therefore structured RISA, and the subsequent Credit Grantor Closed End Credit Provisions, Md. Code Ann., Com. Law §§12-1001 *et seq.* ("CLEC"), enacted in 1983, to allow the financing of only those products or services it expressly approved in the credit contracts by which Marylanders financed their vehicle purchases.  These provisions have saved Maryland car buyers many millions of dollars over the years.

3.    When the General Assembly amended CLEC and RISA to allow the cost of optional debt cancellation agreements to be financed under the laws governing financing of motor vehicle sales, RISA and CLEC, the product was carefully defined as noted above.  By specifying an exacting definition, the General Assembly did not intend to open the door to "look alike" products such as the phony GAP Agreement which is the subject of this case, products which take advantage of the good name and actual value of legitimate debt cancellation agreements.

4.    To understand why the GAP Agreement sold and financed in this action is not a true debt

-2-

cancellation agreement that may be financed under CLEC, one need look no further than what happened to the Named Plaintiffs.  The Named Plaintiffs suffered a total loss of their vehicle.  This should have triggered cancellation of their remaining debt under a true debt cancellation agreement, excusing the named Plaintiffs from paying the "gap" which remained between what was owed on the loan for their vehicle and the amount paid by their insurance carrier for its total loss (this gap being more than $7,000).  Named Plaintiffs' claim under the GAP Agreement they purchased was denied because the terms of the GAP Agreement did not, in fact, provide for "cancellation of the remaining loan balance," as a true debt cancellation agreement would have provided.  Instead, the phony GAP Agreement purported to be conditioned on numerous "exclusions" which are not permitted in a debt cancellation agreement which may be financed under Maryland law. On the basis of one of those purported "exclusions" – an exclusion not permitted under CLEC – Ally/GMAC declined to honor Named Plaintiffs' GAP Agreement. The GAP Agreement sold to Named Plaintiffs is not, in fact, a true debt cancellation agreement which can be financed under Maryland law.

5.      Maryland law prohibits including the cost of anything other than true debt cancellation agreements in credit contacts such as those of the Plaintiff and the Class. Maryland law also enables Named Plaintiffs and the Class to seek and recover compensatory damages, statutory penalties and damages, and declaratory and injunctive relief. Ally/GMAC's violations of Maryland law have enriched it unfairly at the expense of Maryland borrowers, a practice this suit seeks to end.

6.  Ally/GMAC's use of illegal form phony GAP Agreements in numerous transactions makes this case particularly suitable for resolution through a class action lawsuit.

## PARTIES

7.  Named Plaintiff Jennifer Hernandez is a citizen of Maryland, and Named Plaintiff Manuel Maldonado is a resident of Maryland.  Named Plaintiffs purchased a "GAP Agreement" as part of a

Maryland credit contract originated by a licensed Maryland motor vehicle dealer. That motor vehicle dealer assigned and sold the credit contract, which financed the Plaintiffs' purchase of a 2014 Chevrolet Malibu, to Defendant Ally/GMAC.

8. Defendant Ally/GMAC is a Utah corporation with its principal place of business in Utah.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this case under Md. Cts. & Jud. Pro. §6-103(b), as Ally/GMAC transacts business and performs work and service in the State of Maryland, contracts to supply services in the State of Maryland, and regularly does and solicits business and engages in other persistent courses of conduct in the State of Maryland. Among other things, Ally/GMAC places and enforces liens on numerous vehicles in Maryland, and lends money in Maryland.

10. Venue is proper in this Court under Md. Cts. & Jud. Pro. §6-201, as Ally/GMAC carries on a regular business and habitually engage in a vocation in Montgomery County, Maryland. Among other things, Ally/GMAC places and enforces liens on numerous vehicles in Montgomery County, and lends money in Montgomery County.

## FACTUAL ALLEGATIONS

11. On or about December 28, 2013, Named Plaintiffs purchased a new Chevrolet Malibu ("the Malibu") from a licensed Maryland motor vehicle dealer, through a Retail Installment Sale Contract (the "RISC"). The Malibu was purchased and used primarily for personal, household and family purposes.

12. The RISC affirmatively elects to be governed under Subtitle 10 of Title 12 of the Commercial Law article (i.e., CLEC).

13. The Credit Contract includes the purchase of an "Optional GAP Contract" for $595.00.

14. Named Plaintiffs' GAP Agreement is not a debt cancellation agreement under Maryland law.

-4-

The GAP Agreement does not agree to cancel the remaining loan balance in the event of a total loss or theft of the collateral.  Instead, the GAP Agreement excludes numerous amounts from the remaining debt or "gap" after the application of the proceeds of any insurance maintained on the collateral, which are not permitted to be excluded under Maryland law. Ally/GMAC refused to cancel the remaining balance on Named Plaintiffs' account based on a purported "exclusion" from the debt cancellation agreement which is not permitted under Maryland law.

15. In Maryland it is lawful to finance only true debt cancellation agreements which actually "provide[] for cancellation of the remaining loan balance."  Under such true debt cancellation agreements, the only manner in which the actual remaining loan balance may be modified when determining the coverage of a debt cancellation agreement is to subtract any portion of the loan balance which is due to delinquent or deferred payments, past due charges, late payment charges, unearned interest, unearned rental payments, certain amounts actually refunded or credited to the borrower, or the amount of insurance deductibles if agreed by the parties. Md. Code Ann., Com. L. §§12-601(p), 12-1001(l).  Agreements such as the GAP Agreement purchased by Named Plaintiff and the Class which modify the remaining loan balance in any other way, and do not provide for cancellation of the remaining loan balance without such unlawful exclusions, are not debt cancellation agreements that may be financed under Maryland's credit statutes.

16. Named Plaintiffs' RISC, including the purchase of the phony GAP Agreement, was assigned to Ally/GMAC, which accepted the contract and received monthly payments pursuant to that contract.

17. On or about March 9, 2016 Named Plaintiffs suffered a total loss of the Malibu.

18. Named Plaintiffs made a claim to their insurance company for the total loss of the Malibu. The insurance company paid $14,497.70.

19. In accord with the instructions on the GAP Agreement, Named Plaintiffs also requested cancellation of the amount remaining on their vehicle loan after the application of their insurance proceeds. That request was denied, based on a purported "exclusion" not permitted under Maryland law.

20. If the Named Plaintiffs had purchased the kind of true "debt cancellation agreement" contemplated by Maryland's credit statutes − which is how the GAP Agreement was described in writing on the RISC − the Named Plaintiffs would not have had to make any payments toward the remaining loan balance on their vehicle loan for the Malibu after application of the insurance proceeds. However, since the GAP Agreement was not a true debt cancellation agreement, the remaining more than $7,000 amount of their loan balance has not been cancelled and Ally/GMAC has demanded payment in this amount from the Named Plaintiffs.

21. CLEC does not permit the financing of the phony GAP Agreements sold to the Named Plaintiffs and the putative Class because such GAP Agreements fail to agree to provide the benefits upon which the Maryland legislature insisted before allowing such products to be financed under Maryland's credit statutes, as set forth in CLEC, §12-1001(h) and §12-1005(c)(1).

22. The use of the phony GAP Agreements in the transactions of Named Plaintiffs and the Class deprived Named Plaintiffs and members of the Class of the benefits Maryland law was intended to secure. Maryland law does not permit the financing of the phony GAP Agreements in question to Named Plaintiffs and the Class − it only permits the financing of true debt cancellation agreements which agree to cancel the outstanding debt remaining on an account subject only to the exclusions enumerated by Maryland statutes. The deceptive, misleading, and illegal phony GAP Agreements sold to Named Plaintiffs and the Class swindled them, and enriched Ally/GMAC, harming Named Plaintiffs and the Class.

23. The provisions of CLEC which govern the use of debt cancellation agreements – and which permit the financing of true debt cancellation agreements but not the deceptive and phony GAP Agreements sold to Named Plaintiffs and the Class - are intended to protect borrowers like the Named Plaintiffs and the Class, and to ensure that Named Plaintiffs and the Class will not be tricked into financing the cost of valueless products as part of their vehicle purchases.

24. Due to its failure to comply with the terms of CLEC– including the prohibition on financing the phony GAP Agreements at issue here - Ally/GMAC is subject to liability to Named Plaintiffs and the Class for actual and statutory damages, which Named Plaintiffs seek to recover on behalf of themselves and the other members of the Class.

25. Because Ally/GMAC financed phony rather than true debt cancellation agreements in the transactions of the Named Plaintiffs and the Class, Ally/GMAC "may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan." Md. Code Ann., Com. L. §12-1018(a)(2). Further, Ally/GMAC knowingly violated the CLEC in its transactions with Named Plaintiffs and the other members of the Class, and is liable for statutory damages of three times the interest, costs, fees and other charges collected in excess of that authorized by CLEC. Md. Code Ann., Com. L. §12-1018(b).

26. Ally/GMAC regularly financed the sale of form GAP Agreements to Named Plaintiffs and the members of the Class which did not constitute true debt cancellation agreements eligible for financing under Maryland's credit statutes in violation of Maryland law for its own financial benefit, and regularly accepted assignment of credit contracts in the transactions of Named Plaintiff and the Class, financing the sale of phony form GAP Agreements which did not constitute debt cancellation agreements that could be financed under Maryland's credit statutes.

27. Notwithstanding Ally/GMAC's failure to comply with the mandatory terms of CLEC in the

transactions of Named Plaintiffs and other members of the Class, Ally/GMAC has knowingly assessed, demanded and attempted to collect or have collected amounts from Named Plaintiffs and the Class in payment for illegally financed GAP Agreements, for which the borrowers were not liable as a matter of law, and has unlawfully demanded payment from Named Plaintiffs and Class members of alleged deficiency balances which remain because the GAP Agreement in question failed to pay off the loan which remained after application of the buyer's insurance proceeds following a total loss and any legitimate exclusions. In addition, Ally/GMAC has collected and not returned to Named Plaintiffs and the Class interest, costs, fees and other charges which each must forfeit on each credit contract with Named Plaintiffs and other Class members governed by CLEC. Unless and until this Court grants the declaratory and injunctive relief Named Plaintiffs seek through this action for themselves and other members of the Class, Ally/GMAC will continue to engage in business practices which violate Maryland law and enrich it at the expense of Named Plaintiffs and the Class.

28. Each RISC in the transactions of Named Plaintiffs and other Class members contains the following contract provision, required pursuant to Md. Code Ann., Com. L. §14-1302, and referred to hereinafter as the "Holder Notice":

> **ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

### CLASS ACTION ALLEGATIONS

29. Named Plaintiffs bring this action on behalf of a Class which consists of:

> **All consumers who entered into a transaction with a vehicle seller which is a citizen of the state of Maryland, where at least one of the purchasers is a citizen of the state of Maryland, where the vehicle**

**sales contract elects CLEC and includes a charge for the cost of a debt cancellation agreement which does not comply with CLEC, and where the vehicle sales contract was assigned to Ally/GMAC.**

Excluded from the Class are (a) those persons who now are or have ever been executives of Ally/GMAC and the spouses, parents, siblings and children of all such individuals, (b) any persons against whom a judgment has been granted on the account at issue on or before the date of the filing of this Complaint, (c) any person who was granted a discharge pursuant to the United States Bankruptcy Code or state receivership laws after the date of his or her Credit Contract; and (d) any person whose loan was satisfied more than six months prior to the filing of this Complaint.

30. The Class, as defined above, is identifiable. The Named Plaintiffs are members of the Class.

31. The Class is so numerous that joinder of all members is impracticable.

32. There are questions of law and fact which are not only common to the Class but which predominate over any questions affecting only individual class members. The common and predominating questions include, but are not limited to:

(a) Whether Ally/GMAC violated CLEC by systematically utilizing phony GAP Agreements in the transactions of Named Plaintiffs and the Class;

(b) Whether Ally/GMAC knowingly violated CLEC provisions by systematically utilizing phony GAP Agreements which failed to comply with Maryland law in the transactions of Named Plaintiffs and the Class and therefore should be required to forfeit three times the amount of interest, fees and other charges collected in excess of those allowed by CLEC;

(c) Whether Ally/GMAC systematically misrepresented in writing that Named Plaintiffs and the Class were purchasing debt cancellation agreements of value, when the phony GAP Agreements they purchased had little or no value and in fact, could not lawfully be financed in credit

contracts governed by CLEC;

(d) Whether Ally/GMAC systematically and unlawfully collected payments on the accounts of Named Plaintiffs and the Class in connection with the financed sale of the phony GAP Agreements and benefitted financially from the illegal financing of these products;

(e) Whether Ally/GMAC systematically breached the credit contracts it accepted in the transactions of Named Plaintiffs and the Class by failing to comply with Maryland law;

(f) Whether Ally/GMAC systematically assessed, attempted to collect and/or collected interest, costs, fees and other charges from Named Plaintiffs and members of the Class that it had no legal right to demand or collect, and for which the Named Plaintiffs and Class members were not liable; and,

(g) Whether declaratory and injunctive relief is proper to compel Ally/GMAC's compliance with Maryland law in the transactions of Named Plaintiffs and the Class.

33.     Claims of the Named Plaintiffs are typical of the claims of the respective members of the Class within the meaning of Maryland Rule 2-231(a)(3), and are based on and arise out of similar facts.

34.     The Named Plaintiffs are adequate representatives of the Class within the meaning of Maryland Rule 2-231(a)(4). The Named Plaintiffs do not have a conflict of interest with members of the Class. Moreover, the Named Plaintiffs are represented by Counsel who are experienced in class actions and will protect the interests of members of the Class.

35.     The prosecution of separate actions by individual members of the Class would create a risk of establishing incompatible standards of conduct for Ally/GMAC, within the meaning of Maryland Rule 2-231(b)(1)(A).

36.     Ally/GMAC's actions are generally applicable to the respective Class as a whole, and

Named Plaintiffs seek equitable remedies with respect to the Class as a whole, within the meaning of Maryland Rule 2-231(b)(2).

37.     Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Maryland Rule 2-231(b)(3).

38.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

39.     Named Plaintiffs' counsel are experienced in class actions, and foresee little difficulty in the management of this case as a class action.

## COUNT ONE – CREDIT GRANTOR CLOSED END CREDIT PROVISIONS

40.     Named Plaintiffs re-allege and incorporate by reference the foregoing allegations as if fully set forth herein.

41.     CLEC authorizes credit grantors to provide closed end credit under certain circumstances and subject to certain limitations.

42.     Ally/GMAC is a "credit grantor" in the transactions of Named Plaintiffs and the Class, within the meaning of Md. Com. Law §12-1001(b).

43.     The seller in the transactions of Named Plaintiffs and the Class is also a "credit grantor" within the meaning of Md. Code Ann., Com. Law §12-1001(b).

44.     Ally/GMAC is liable for the actions of the seller in the transactions of Named Plaintiffs and the Class.

45.     CLEC, at Md. Code Ann., Com. Law §12-1005, regulates and limits the kind of charges and the amount of charges which a credit grantor may charge and which it may collect from

consumers in connection with extensions of credit governed by CLEC.  Charges which are not enumerated by §12-1005, other than interest, may not be charged in such a transaction.

46.     Although CLEC, at Md. Code Ann., Com. Law §12-1005(c)(1), authorizes credit grantors to finance the cost of true optional debt cancellation agreements, the phony GAP Agreements sold to Named Plaintiffs and the members of the Class are not eligible for financing as a debt cancellation agreement under CLEC because they do not meet the definition of a debt cancellation agreement under the statute.

47.     In violation of CLEC, Md. Code Ann., Com. Law §12-1005, Ally/GMAC charged and collected from Named Plaintiffs and the Class impermissible charges for the phony GAP Agreements sold to them – charges which are not permitted to be financed under CLEC.

48.     Ally/GMAC knowingly violated CLEC in the transactions of Named Plaintiffs and the members of the Class.

## COUNT TWO – CONSUMER PROTECTION ACT

49.     Plaintiffs re-allege and incorporate by reference the foregoing allegations as if fully set forth herein.

50.     Each vehicle purchase and financing transaction by the Named Plaintiffs and the members of the Class is governed by the Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101 *et seq.*.

51.     In the transactions of Named Plaintiffs and the Class, Ally/GMAC acted as a "merchant" who "directly or indirectly either offers or makes available to consumers any consumer goods, consumer services, ... or consumer credit" [Md. Code Ann., Com. Law §13-101(g)], and is thus governed by the Consumer Protection Act.

52.     Section 13-303 of the Commercial Law Article prohibits unfair or deceptive trade practices in the sale and lease, and in the offer for sale and lease, of consumer goods and services, and in the extension of consumer credit.

53.     Ally/GMAC committed unfair and deceptive trade practices in violation of the Consumer Protection Act through its scheme to mislead and cheat Named Plaintiffs and the Class. As part of this scheme, Ally/GMAC financed the sale of GAP Agreements which did not constitute debt cancellation agreements eligible for financing under CLEC, and agreed to accept assignment of credit contracts financing the GAP Agreements in the transactions of Named Plaintiffs and the Class, and it collected interest on charges and payment for those agreements which are prohibited under Maryland law.

54.     By engaging in the acts and omissions set forth in this Complaint, by making the misrepresentations set forth in this Complaint, and by failing to disclose the material facts where the failure to disclose deceived or tended to deceive, as set forth in this Complaint, Ally/GMAC committed unlawful trade practices, in violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§13-303(1), (2) and (3) and §§13-301(1), (2)(i), (ii) and (iv) and/or (3).

55.     Ally/GMAC's conduct as set forth above had the capacity, tendency or effect of deceiving Named Plaintiffs and the Class, who in fact entered into the transactions and paid the wrongful charges levied, causing them injury and loss.

56.     As a result of the unfair and deceptive trade practices in violation of the Consumer Protection Act by Ally/GMAC, Named Plaintiffs and the Class paid more in their financing contracts than was actually due, and either incurred finance charges on the amount of the overcharge or lost the use of those funds.

## COUNT THREE - BREACH OF CONTRACT

57.     Plaintiffs re-allege and incorporate by reference the foregoing allegations as if fully set forth herein.

58.     Maryland's CLEC law was in effect at the time the Named Plaintiffs' and Class members' credit contracts — including the financed purchase of the phony GAP Agreements - were originated.  The provisions of CLEC became a part of the contracts of Named Plaintiffs and the Members of the Class just as if the parties expressly included the CLEC provisions in their credit contracts. In addition, the contracts of Named Plaintiffs and other members of the Class explicitly refer to and, thus, incorporate the CLEC provisions as contract terms.

59.     When Ally/GMAC violated CLEC as set forth above, Ally/GMAC materially breached its contracts with Named Plaintiffs and the Class.

60.     As a result of Ally/GMAC's breaches of contract, Named Plaintiffs and members of the Class have been damaged.  Named Plaintiffs and members of the Class have been deprived of the substantial rights granted under CLEC, including the right to purchase a debt cancellation agreement of value without the risk of purchasing an illusory GAP Agreement, and the right to be free from charges not specifically authorized in the CLEC statute.  In addition, Named Plaintiffs and the Class also sustained financial damages as a result of Ally/GMAC's failure to return all of the interest, costs, fees and other charges collected on their loans, and Named Plaintiffs and the Class sustained other damages and losses including the amounts they paid for the illusory, phony debt cancellation agreements.

## COUNT FOUR - DECLARATORY AND INJUNCTIVE RELIEF

61.     Plaintiffs re-allege and incorporate by reference the foregoing allegations as if fully set forth herein.

62.     This claim for declaratory relief is brought under the Maryland Declaratory Judgment Act, Md. Cts. & Jud. Pro. §3-406, to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal relations under the credit contracts of the Named Plaintiffs and members of the Class and the consumer protections embodied in CLEC.

63.     Ally/GMAC maintains that the GAP Agreements in its transactions with Named Plaintiffs and the Class are legitimate debt cancellation agreements which may be sold and financed in connection with CLEC contracts.

64.     Named Plaintiffs and members of the Class have received or will receive collection notices from Ally/GMAC and/or debt collectors demanding payment of amounts including amounts attributable to the sale of phony GAP Agreements which Named Plaintiffs assert could not be financed under CLEC.

65.     These practices continue and will continue unless and until this Court declares and affirms that Ally/GMAC may not collect from Named Plaintiffs or Class members any amounts attributable to phony debt cancellation agreements financed in their credit contracts, and may not collect any interest, fees, costs or other charges in connection with their credit contracts.

66.     This presents an actual, judicable controversy between the parties relating to the construction of the credit contracts between Ally/GMAC and the Named Plaintiffs and members of the Class, and the application of CLEC to those contracts, because Ally/GMAC has sought or likely will seek to collect on the amounts attributable to the sale of the GAP Agreements, or attributable to interest, costs, fees or other charges which may not be collected due to the sale of phony debt cancellation agreements to Named Plaintiffs and members of the Class which may not be financed under CLEC or RISA.

67.     Named Plaintiffs and members of the Class have a right to be free from

Ally/GMAC's attempts to collect interest, fees, costs and other charges which are not collectible as a matter of law under their contracts.

68.     The benefits to Named Plaintiffs and members of the Class in obtaining an injunction outweigh any potential harm Ally/GMAC would incur as a result of an injunction, under the balance of the convenience test, as Ally/GMAC has no legal or contractual right to collect legally impermissible amounts from Named Plaintiffs and members of the Class, and Named Plaintiffs and members of the Class would greatly benefit from being relieved of Ally/GMAC's attempts to collect these illegal charges.

69.     Named Plaintiffs and members of the Class will suffer irreparable injury unless the requested injunctions are granted, as Ally/GMAC will continue to attempt to collect, and collect, interest, costs, fees and other charges from them in violation of the law, and Ally/GMAC will report erroneous and derogatory information to the credit reporting agencies regarding Named Plaintiffs and members of the Class based on the illegally imposed charges.

70.     The public interest is best served by granting the requested injunctions, as the public has a compelling interest in preventing Ally/GMAC from violating the statutory and common law of the State of Maryland in the sale of GAP Agreements to Named Plaintiffs and members of the Class, and a compelling interest in seeing the laws of the State of Maryland obeyed in those transactions.

71.     Named Plaintiff and members of the Class are likely to succeed on the merits of this action, as the CLEC statutes does not permit the financing of the phony GAP Agreements at issue.

## COUNT FIVE - RESTITUTION AND UNJUST ENRICHMENT

72.     Plaintiffs re-allege and incorporate by reference the foregoing allegations as if fully set forth herein.

73.     By paying money attributable to the financing of phony debt cancellation agreements

-16-

which could not be financed under credit contracts governed by CLEC, and attributable to interest, fees, costs and other charges claimed by Ally/GMAC, Named Plaintiffs and members of the Class conferred a benefit of these illegally collected charges upon Ally/GMAC.

74.     Ally/GMAC accepted the benefits conferred upon it by Named Plaintiffs and members of the Class when it accepted the money paid toward illegally financed phony debt cancellation agreements, interest, costs, fees and other charges. Further, Ally/GMAC was aware of, and had knowledge of, the benefits conferred on it, as it demanded those benefits.

75.     Ally/GMAC's collection, acceptance and retention of these charges, when Ally/GMAC was not entitled to the charges as a matter of law, is and was and continues to be unjust and inequitable, and Ally/GMAC has not refunded the charges to Named Plaintiffs and members of the Class. Ally/GMAC should not be permitted to retain the benefits of those illegal charges.

76.     Ally/GMAC's continued collection and withholding of the illegal charges is improper.

77.     Named Plaintiffs and members of the Class conferred these unjust benefits upon Ally/GMAC after and as a result of Ally/GMAC's misconduct as set forth herein.

WHEREFORE, Plaintiffs request:

A.     certification as a class action pursuant to Maryland Rule 2-231;

B.     declaratory judgment that Ally/GMAC may not collect any interest, fees, costs or other non-principal charges on a loan account of Named Plaintiffs and members of the Class;

C.     a preliminary and permanent injunction prohibiting Ally/GMAC from collecting or attempting to collect interest, fees, costs or other non-principal charges from Named Plaintiffs and members of the Class;

D,     payment to Named Plaintiffs and members of the Class of the amount of all sums

-17-

paid by Named Plaintiffs and members of the Class toward phony debt cancellation agreements not eligible for financing under CLEC; the statutory civil penalties imposed by CLEC, Md. Code Ann., Com. Law §12-1018(a)(2) & (b), in the amount of all sums paid by Named Plaintiffs and the members of the Class as interest, costs, fees or other non-principal charges, trebled; in an aggregated amount in excess of $75,000.00 for the Class as a whole; such compensatory damages as the evidence shall warrant; pre-judgment and post-judgment interest on all sums awarded to Named Plaintiffs and members of the Class; and reasonable counsel fees and the costs of these proceedings; and,

J.      Such other and further relief as the nature of this case may require.

Respectfully submitted,

GORDON, WOLF & CARNEY, CHTD.

By: _____
Benjamin H. Carney
Martin E. Wolf
GORDON, WOLF & CARNEY, CHTD.
102 W. Pennsylvania Avenue, Suite 402
Towson, Maryland 21204
Tel. 410-825-2300
Fax. 410-825-0066
bcarney@GWCfirm.com
mwolf@GWCfirm.com

Loraine L. Bright
915 Fitzpatrick Drive
Bel Air, MD 21014
Tel. 410-688-1101
Fax. 410-420-0906
brightlaw@yahoo.com

ATTORNEYS FOR PLAINTIFFS

-18-

## JURY TRIAL

Plaintiffs demand trial by jury.

Benjamin H. Carney

## Rule 16-308(c) STATEMENT

This case is a consumer class action seeking relief for the financing of phony debt cancellation agreements in vehicle purchase transactions. As discussed below, it satisfies the Rule 16-205(c) factors for assignment to the Business and Technology Program (the "Program"):

**(1)     The nature of the relief sought.**

The Maryland Business and Technology Task Force Report (the "Report") recommended that eligibility for assignment to the Program be restricted to complaints "seeking compensatory damages totaling $50,000.00 or more, or . . . primarily injunctive or other equitable relief." Report, p.8 part VI.B.1.a. The present case meets this requirement. Although the exact size of the Class and exact amount of damages recoverable in this case are unknown, the Complaint seeks to recover damages on behalf of a Class of numerous Maryland consumers, where aggregated damages are expected to exceed $75,000. *See* Complaint *ad damnum* clause. In addition, the Complaint seeks declaratory and injunctive relief to restrain the defendant from continuing to attempt to collect amounts from Class members. Accordingly, the nature of the relief sought weighs in favor of assigning this case to the Program.

**(2)     The number and diverse interests of the parties.**

With respect to this factor, the Report determined that the Program was appropriate for cases involving business entities, as well as individuals "if involved in a dispute appropriate for Program designation." Report p. 8 part VI.B.1. The Task Force Report further found that "commercial class actions" "should presumptively be assigned to the Program." *Id.* at pp. 8-9, part VI.B.1.b. (emphasis added). The present case meets this requirement, as it involves a business entity, arises from that entity's commercial activity, and is a commercial class action. This factor likewise weighs in favor of assignment to the Program.

**(3)     The anticipated nature and extent of pretrial discovery and motions.**

This case will require bifurcated discovery, with class certification discovery proceeding first, followed by Plaintiff's motion for class certification, and merits-focused discovery commencing after the Court's decision on class certification. The complex nature of the class-action proceedings weighs in favor of Program assignment.

**(4)     Whether the parties agree to waive venue for the hearing of motions and other pretrial matters.**

Plaintiffs do not anticipate that this will be an issue in this case.

**(5)     The degree of novelty and complexity of the factual and legal issues presented.**

This case presents complex legal issues. Among other things, this case involves alleged violations of Maryland's Unfair and Deceptive Trade Practices Act ("UDAP"), rendering it a case which should be "presumptively assigned to the Program." Report pp. 9 part VI.B.1.b(x). The complex nature of the case also supports Program assignment, as noted above.

**(6)     Whether business or technology issues predominate over other issues presented in the action.**

Business and technology issues predominate over other issues in this case. As discussed above, the Program is designed to accommodate commercial class actions, as well as cases asserting claims under the UDAP. As the issues in this case will focus on class certification issues as well as the UDAP, issues that the Program was designed to address are the focus of this case.

**(7)     The willingness of the parties to participate in ADR procedures.**

Plaintiffs are willing to explore participation in mediation.